UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

J. SLAGTER & SON CONSTRUCTION CO.,

    Plaintiff,

v.

THE IBCS GROUP, INC., a foreign corporation,
IBCS FIDELITY, INC., a foreign corporation,
and EDMUND SCARBOROUGH, an
individual,
    Defendants.
_____/

Case No. 1:11-CV-605

HON. GORDON J. QUIST

## OPINION

On or about May 19, 2011, Plaintiff, J. Slagter & Son Construction Co. ("Slagter"), filed a Complaint against Defendants, The IBCS Group, Inc., IBCS Fidelity, Inc., and Edmund Scarborough ("Scarborough") (hereinafter collectively referred to as "Defendants"), in Kent County Circuit Court, alleging breach of contract, unjust enrichment, promissory estoppel, and fraudulent misrepresentation. Defendants removed the action to this Court on June 9, 2011, on the basis of diversity jurisdiction.[1] Defendants have now filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the Court will transfer this action to the United States District Court for the Western District of Virginia and decline to reach the merits of the motion to dismiss.

---

[1] Jurisdiction appears proper as Slagter is a Michigan corporation with its principal place of business in Grand Rapids, Michigan; Defendants IBCS Group, Inc. and IBCS Fidelity, Inc. are both Florida corporations with their principal places of business in Charlottesville, Virginia; and Defendant Scarborough is a resident of Virginia. (Compl. ¶¶ 1-5.)

## I. FACTS

The following facts are taken from the allegations in the Complaint.

Slagter was low bidder on Michigan Department of Transportation ("MDOT") construction project number 41027-108942, Fuller Ave. over I-196, located in Kent County, Michigan (the "Project"). In accordance with Michigan law, MDOT required Slagter to submit payment and performance bonds before it could be awarded the contract. *See* M.C.L. § 129.201. Defendant Scarborough, an individual surety, acting through his agent, one of the IBCS Defendants, who are named in the alternative,[2] provided Slagter with payment and performance bonds. MDOT rejected these bonds, however, because (1) they were not executed by a surety company authorized to conduct business with the State of Michigan; (2) they were not on, and did not otherwise comply with the basic requirements of, an MDOT bond form; and (3) contrary to the MDOT's requirement that the bonds cover the life of the contract, they had a one-year expiration date.

In this case, Slagter seeks to recover the $203,830.29 in bond premiums that it paid to Defendants for the rejected bonds. Count I alleges that Defendants "were obligated to provide bonds that would comply with MDOT bond form and statutory requirements" and "breached the contract by failing to provide bonds that would be acceptable to MDOT." (Compl. ¶¶ 27-28.) Count II alleges that Defendants knew or had reason to know that the bonds would be rejected and, therefore, would be unjustly enriched if allowed to keep the $203,830.29 Slagter paid in bond premiums. (*Id.* ¶¶ 32-38.) Count III alleges promissory estoppel based upon Defendants' alleged promise to provide bonds that would be acceptable to MDOT and marketing materials which allegedly

---

[2] According to the Complaint, the IBCS Defendants were named in the alternative because, "due to commonalities of names, addresses, and principles, Slagter is unclear with which entity" it actually contracted. (Compl. ¶ 4.)

promised a refund of premiums if a bond were rejected. (*Id.* ¶¶ 40-45.) And Count IV alleges fraudulent misrepresentation based upon Defendants' alleged representations that "(1) [they] had written bonds with the State of Michigan as obligee; (2) if the bond was rejected, the bond premium would be refunded; and (3) if the bond was rejected they would resolve the problem with the bond form and would defend the viability of their bond form." (*Id.* ¶¶ 47-54.) The only documentation attached to the Complaint was an MDOT letter explaining its rationale for rejecting the bonds. (*Id.* Ex. A.)

## II. ANALYSIS

Although Slagter refers to the contractual obligations of the parties in the Complaint, it did not attach a copy of the contract. Defendants, however, attach to their Motion to Dismiss a written agreement between Scarborough and Slagter entitled "General Agreement of Indemnity" (the "Indemnity Agreement"), which they allege governs this dispute. (Defs.' Mot. to Dismiss Ex. 1.) The document is dated February 11, 2011 and consists of eleven pages. The opening paragraphs explain that Scarborough, the Surety, agreed to execute bonds needed by Slagter, the Principal, only upon the "express understanding" that the Indemnity Agreement would govern such transactions:

> WHEREAS the PRINCIPAL, in performance of contracts and the fulfillment of obligations generally, whether solely in its own name or as co-venturer with others, may desire, or be required to give or procure certain BONDS; and,
>
> WHEREAS, at the request of PRINCIPAL and the INDEMNITORS and *upon express understanding that this Agreement should be given*, the SURETY has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said BONDS on behalf of PRINCIPAL.

(*Id.* at 1) (emphasis added.) In addition, paragraphs II(D) and XV(D), which follow, specifically address Defendants' liability, where, as here, an obligee rejects a bond:

> In addition to any other rights of either party to the Standard Indemnity Agreement under which Edmund C. Scarborough is furnishing bonding for PRINCIPAL(S), it

3

> is hereby agreed by the undersigned Company for which Edmund C. Scarborough is issuing or has issued a bid bond, payment bond and/or performance bond as an individual surety that should the Owner or any other named obligee object to the bond(s) for any reason and refuse to proceed with the contract for which the bond(s) was issued, the Company agrees to hold Scarborough, his agents, employees and assigns harmless from and against any and all claims, damages, costs and expenses, including attorneys fees that the Company suffers or incurs as a result thereof. If for any reason whatsoever, the Obligee rejects the surety bond and you, as principal, request in writing that the surety advocate for the bond's approval, then you, as principal, agree to pay for any all related costs, including but not limited to attorney's fees. The surety shall utilize its best efforts to obtain approval of the bond by the Obligee, but makes no guarantee or warranty that its efforts will succeed.
>
> \*\*\*
>
> The INDEMNITORS acknowledge and agree that it is their sole responsibility to provide the proper forms for the BONDS to be executed by the SURETY, and to review and approve any BOND or undertaking executed by the SURETY on its own forms. Neither the SURETY nor its agents shall have any liability whatsoever to the INDEMNITORS if they fail to furnish the SURETY with the proper forms or object to the forms furnished by the SURETY. It shall be the sole responsibility of the INDEMNITORS to review all BOND forms executed by the SURETY for appropriateness and for any errors or omissions prior to delivery of the BONDS to an obligee. SURETY and its agents shall have no liability to the INDEMNITORS on account of any negligence (whether sole or concurrent), inadvertance, error or omission in the preparation, execution or delivery of any BONDS. Prior to requesting that the SURETY issue any BOND, the INDEMNITORS shall obtain confirmation that the proposed obligee on the BOND will accept the SURETY as surety on the proposed BOND, and neither the SURETY nor its agents shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the SURETY as surety on any bond.

(*Id.* ¶¶ II(D) and XV(D).) The Indemnity Agreement also contains the following forum selection clause, on which Defendants base their request to transfer venue:

> This Agreement shall be interpreted in accordance with the laws of the Commonwealth of Virginia. Venue in any action relating to this Agreement shall lie solely in the appropriate court located in the Commonwealth of Virginia.

(*Id.* ¶ XIV(C).)

Slagter does not challenge the authenticity of the Indemnity Agreement, but instead argues simply that the Indemnity Agreement does not apply to this dispute. According to Slagter, the

Indemnity Agreement was merely an "ancillary" agreement intended as "extra security" for Defendants and meant only to apply after the bonds were accepted and became actionable by third parties. Instead, Slagter asserts, its claims are based upon a document entitled "The IBCS Group, Inc. Procedures Letter" ("Procedures Letter"), which it attaches to its reply. (Pl.'s Reply Ex. C.) The Procedures Letter sets forth the specific procedures for requesting bonds, including that such requests must be made on the appropriate IBCS form and at least seven business days prior to the bid date. (*Id.*) Because there is no forum selection clause in the Procedures Letter and because venue is otherwise proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), Slagter asserts, the Court should reject Defendant's request to transfer venue.

The Court believes that both the Procedures Letter and Indemnity Agreement apply to this dispute. These two documents must be viewed together in determining the parties' contractual obligations. First, both documents were executed on the same day and as part of the same transaction. Second, the plain language of the Procedures Letter demonstrates that it cannot be read in isolation:

> *As a supplement to Section VI of the General Agreement of Indemnity*, the PRINCIPAL and INDEMNITORS will pay to the SURETY, as outlined in Section XIX, General Provisions of the General Agreement of Indemnity, all fees and charges of the SURETY for the BONDS . . . immediately upon issuance of each BOND, or as such fee may arise. . . . The full initial fee is fully earned upon execution of the BOND and will not be refunded, waived or canceled for any reason.

(Procedures Letter at 2) (emphasis added.) And third, as set forth above, the Indemnity Agreement specifically addresses Defendants' liability in the event an obligee (here, MDOT) rejects a proposed bond. Thus, by its plain terms, it is not limited to disputes arising after bonds have been accepted and become actionable by third parties, as Slagter argues. Therefore, the Court finds that the Indemnity Agreement, including its forum selection clause, applies to this dispute.

5

## A. Enforceability of the Forum Selection Clause

Having determined that the Indemnity Agreement's forum selection clause is applicable, the Court must next address its enforceability. The enforceability of a forum selection clause is an inquiry governed by federal law. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). As the Sixth Circuit has explained, "[a] forum selection clause should be upheld absent a strong showing that it should be set aside" and the burden is on the party opposing the clause to make that showing. *Id.* The inquiry involves three factors: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.*

As to the first factor, the party opposing enforcement of the clause must show fraud in the inclusion of the clause itself; general allegations of fraud are insufficient to invalidate a forum selection clause. *Id.* Slagter makes no allegation of fraud nor offers any proof with regard to the inclusion of the forum selection clause. *See id.*; *see also Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006) (finding that the party opposing enforcement of a forum selection clause had not met its burden where it offered no evidence that it "did not knowingly and willingly consent to inclusion of the forum selection clause in the agreement").

As to the second factor, Slagter must show that a Virginia court "would ineffectively or unfairly handle the suit." *Wong*, 589 F.3d at 829. This prong is not satisfied simply because different or less favorable law or procedure would apply, but instead requires a showing that "a risk exists that the litigants will be denied any remedy or will be treated unfairly." *Id.* Slagter makes no argument that it would be denied any remedy or be treated unfairly by a Virginia court.

As to the third factor, Slagter must show that litigating in Virginia would be so inconvenient that enforcement of the clause would be "unjust or unreasonable." *Id.* In this regard, Slagter argues

6

that Virginia would be inconvenient not only because Slagter itself is located in Michigan, but also because "the vast majority of all documents and non-party witnesses are located in Michigan." (Pl.'s Response at 6.) However,

> [a] finding of unreasonableness or injustice must be based on more than mere inconvenience to the party seeking to avoid the requirements of the forum selection clause. It must instead appear that enforcement in [Virginia] would be manifestly and gravely inconvenient to the party seeking to avoid enforcement such that it will effectively be deprived of a meaningful day in court.

*Assocs. in Urology*, 453 F.3d at 722-23 (internal citations and quotations omitted). The Court does not find the distance between Michigan and Virginia to be so great as to deprive Slagter of its day in court. There may be a couple of depositions, but this case does not appear to be so complex as to require much travel or massive discovery. Furthermore, the Virginia court could require Defendants to depose Michigan residents in Michigan or by a video hook-up. In sum, Slagter has not met its burden of demonstrating that the forum selection clause should be set aside.

**B. Transfer of Venue under § 1404(a)**

In considering a motion to transfer venue under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness. . . ." *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). The private interests of the parties include:

> (1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

*Campbell v. Hilton Hotels Corp.*, 611 F. Supp. 155, 157 (E.D. Mich. 1985) (quoting *Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)). Public interest factors include: (i) the enforceability

7

of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

Although not dispositive, the presence of a valid forum selection clause is entitled to substantial consideration under the § 1404(a) analysis. *Id.* at 880; *see also Ohio Learning Ctrs., LLC v. Sylvan Learning Ctrs., Inc.*, No. 1:10-CV-1062, 2010 WL 2803042, at *6 (N.D. Ohio July 14, 2010). "While courts normally show deference to a plaintiff's choice of forum, the existence of a valid forum selection cause shifts the burden on a motion to transfer venue to the plaintiff." *Ohio Learning Ctrs.*, 2010 WL 2803042, at *6; *see also Superior Care Pharm. Inc., v. Medicine Shoppe Int'l, Inc.*, No. 2:10-cv-207, 2011 WL 597065, at *4 (S.D. Ohio Feb. 10, 2011) (finding that the presence of a valid forum selection clause negates the presumption given to plaintiff's choice of forum and shifts the burden to plaintiff to demonstrate why he should not be bound by his contractual choice of forum); *Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002) (shifting burden to party opposing transfer based on a valid forum selection clause).

With regard to the private interest factors, Slagter argues that Virginia is an inconvenient forum because not only is Slagter itself located in Michigan, but so are the majority of documents and non-party witnesses. As to Slagter's own convenience, however, by consenting to the forum-selection clause, Slagter has already agreed that Virginia is a convenient forum. *Id.* at 816; *Superior Care*, 2011 WL 597065, at *5. As to the convenience of witnesses, Slagter's bare allegations unsupported by affidavit or otherwise, and which fail to identify the witnesses or what their testimony would be, are insufficient to establish that Virginia is an inconvenient forum. *See e.g., Esperson v. Trugreen Ltd. P'ship*, No. 2:10-cv-02139-STA-cgc, 2010 WL 4362794, at *8 (W.D.

Tenn. Oct. 5, 2010). And as to documents, although Slagter asserts that they are located in Michigan, because of the various methods by which documents may transferred (electronically or otherwise), the Court finds this factor to be a wash. *See Viron Int'l Corp.*, 237 F. Supp. 2d at 817.

Slagter makes no arguments relating to the public interest factors other than asserting that Michigan has an interest in providing a forum for addressing the grievances of its own citizens. The Court does not find this fact alone to be sufficient to overcome a valid forum selection clause. To do so would only encourage people to violate their contractual obligations, as any Plaintiff could avoid an unfavorable forum selection clause simply by filing suit in his home state. In short, the Court finds that Slagter has failed to meet its burden of justifying why it should not be bound by its contractual choice of forum and that this case should be transferred pursuant to § 1404(a).

Having concluded that this case should be adjudicated elsewhere, the Court declines to reach Defendants' remaining arguments. Defendants' motion to dismiss Slagter's individual claims under Fed. R. Civ. P. 12(b)(6) will be properly before the United States District Court for the Western District of Virginia.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) Or In the Alternative To Transfer Venue Pursuant to 28 U.S.C. § 1404(a). The motion will be denied as to dismissal under Rule 12(b)(6), but granted as to transfer pursuant to § 1404(a).

A separate Order will issue.

Dated: August 10, 2011              /s/ Gordon J. Quist
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE